**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| STILLWATER MINING COMPANY d/b/a SIBANYE-STILLWATER AND THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, | |
| *Plaintiffs,* | **Court No. 26-03232** |
| v. | |
| UNITED STATES, | |
| *Defendant.* | |

**COMPLAINT**

Pursuant to Rules 3(a)(2), 5, 7(a), 8, 10, and 11 of the Rules of the United States Court of International Trade, Stillwater Mining Company d/b/a Sibanye-Stillwater (hereinafter "Sibanye-Stillwater") and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, industrial and Service Workers International Union, AFL-CIO, CLC (hereinafter "USW") (hereinafter, collectively, "Plaintiffs") allege the following for their Complaint against the United States, Defendant:

**ADMINISTRATIVE DETERMINATION TO BE REVIEWED**

1. This civil action is a challenge seeking judicial review of the U.S. International Trade Commission's (the "Commission") final negative determination in the investigation of unwrought palladium from Russia, Inv. Nos. 701-TA-776 and 731-TA-1761. *See Unwrought Palladium From Russia; Determinations*, 91 Fed. Reg. 36,878 (Int'l Trade Comm'n June 18, 2026) ("Final Determination"). The Commission's Final

1

Determination was accompanied by the Views of the Commission. The Commission's

Final Determination was also accompanied by a Staff Report to the Commission. The

Views and Staff Report are contained in USITC Publication 5749 (June 2026), entitled

*Unwrought Palladium from Russia*, Inv. Nos. 701-TA-776 and 731-TA-1761 (Final).

## JURISDICTION

2. This action arises and is brought under sections 516A(a)(2)(A)(i)(I) and

516A(a)(2)(B)(ii) of the Tariff Act of 1930, as amended, 19 U.S.C.

§§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(ii). 28 U.S.C. § 1581(c) provides this Court

with exclusive jurisdiction of actions brought under those provisions.

## STANDING OF PLAINTIFF

3. Sibanye-Stillwater is a domestic producer of unwrought palladium in the United States,

was a petitioner in the administrative proceeding, was a party to the investigation that is

the subject of this complaint, and participated fully in that investigation. Sibanye-

Stillwater is thus an "interested party" within the meaning of sections 771(9)(C) and

516A(f)(3) of the Tariff Act, *supra*, 19 U.S.C. §§ 1677(9)(C) and 1516a(f)(3), as well as

28 U.S.C. § 2631(k)(1), and was a "party to the proceeding" within the meaning of 19

U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c). Accordingly, Sibanye-Stillwater has standing

to bring this action pursuant to section 516A(d) of the Tariff Act, *supra* 19 U.S.C.

§ 1516a(d), and under 28 U.S.C. § 2631(c).

4. The USW is a certified union that represents workers engaged in the domestic production

of unwrought palladium, was a petitioner in the administrative proceeding, was a party to

the investigation that is the subject of this complaint, and participated fully in that

investigation. The USW is thus an "interested party" in the investigation within the meaning of sections 771(9)(D) and 516A(f)(3) of the Tariff Act, *supra*, 19 U.S.C. §§ 1677(9)(D) and 1516a(f)(3), as well as 28 U.S.C. § 2631(k)(1), and was a "party to the proceeding" within the meaning of 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c). Accordingly, the USW has standing to bring this action pursuant to section 516A(d) of the Tariff Act, *supra* 19 U.S.C. § 1516a(d), and under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

5. On June 18, 2026, the Commission published in the *Federal Register* its final negative determination on unwrought palladium from Russia. *See* 91 Fed. Reg. 36,878. In accordance with section 516A(a)(2)(A)(i)(I) of the Tariff Act, *supra*, 19 U.S.C. § 1516a(a)(2)(A)(i)(I), Plaintiffs filed a timely summons on July 16, 2026, within thirty days after the determination was published in the *Federal Register*. Consistent with the requirements of 19 U.S.C. § 1516a(2)(A)(i)(I), the instant complaint is being filed within thirty days from the filing of the summons by Plaintiff.

## STATEMENT OF FACTS

6. On July 30, 2025, Plaintiffs filed antidumping and countervailing duty petitions with the U.S. Department of Commerce ("Commerce") and the Commission, alleging in part that the domestic unwrought palladium industry was materially injured or threatened with material injury by reason of imports of unwrought palladium from Russia ("subject merchandise").

7. On August 4, 2025, the Commission published its notice of institution of antidumping and countervailing duty investigations and scheduling of the preliminary phase

investigations. *See Unwrought Palladium From Russia; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 90 Fed. Reg. 36,451 (Int'l Trade Comm'n August 4, 2025) (institution of investigations and scheduling of preliminary phase investigations).

8. On September 18, 2025, the Commission published its preliminary determination, finding that "there is a reasonable indication that an industry in the United States is materially injured by reason of imports of unwrought palladium from Russia." *See Unwrought Pallidum {sic} From Russia; Determinations*, 90 Fed. Reg. 45,055 (Int'l Trade Comm'n September 18, 2025). All three Commissioners (Chair Karpel, Commissioner Kearns, and Commissioner Johanson) voted affirmatively for present material injury.

9. On February 24, 2026, the Commission commenced the final phase of these investigations. *See Unwrought Palladium From Russia; Scheduling of the Final Phase of Countervailing Duty and Antidumping Duty Investigations*, 91 Fed. Reg. 8,899 (Int'l Trade Comm'n February 24, 2026).

10. On May 1, 2026, Commerce published its final affirmative antidumping determination on unwrought palladium from Russia in the *Federal Register*. *See Unwrought Palladium From the Russian Federation: Final Affirmative Determination of Sales at Less Than Fair Value*, 91 Fed. Reg. 23,402 (Dep't Commerce May 1, 2026).

11. On May 22, 2026, Commerce published its final affirmative countervailing duty determination on unwrought palladium from Russia in the *Federal Register*. *See Unwrought Palladium from the Russian Federation: Final Affirmative Countervailing Duty Determination*, 91 Fed. Reg. 30,283 (Dep't Commerce May 22, 2026).

12. On May 29, 2026, the Commission determined that a U.S. industry was neither materially injured nor threatened with material injury by reason of imports of unwrought palladium from Russia. The final ITC determinations were published in the *Federal Register* on June 18, 2026. *See Unwrought Palladium From Russia; Determinations*, 91 Fed. Reg. 36,878 (Int'l Trade Comm'n June 18, 2026) (final determination). The Views of the Commission are set forth in *Unwrought Palladium from Russia*, Inv. Nos. 701-TA-776 and 731-TA-1311 (Final), USITC Pub. 5749 (June 2026).

## STATEMENT OF FACTS

### COUNT ONE

13. Paragraphs 1-12 are hereby re-alleged and incorporated by reference.

14. The Commission made several determinations with regards to the conditions of competition in the U.S. market for unwrought palladium during the period of investigation ("POI"), including regarding factors affecting palladium prices. In making these determinations, the Commission did not address, or otherwise ignored, evidence that contradicted its conclusions.

15. The Commission's conditions of competition findings are unsupported by substantial evidence.

### COUNT TWO

16. Paragraphs 1-15 are hereby re-alleged and incorporated by reference.

17. The Commission failed to adequately consider whether any change in the volume, price effects, or impact of imports of the subject merchandise since the filing of the petition

was related to the pendency of the investigation, as required by Section 771(7)(I) of the Act, 19 U.S.C. § 1677(7)(I).

18. The Commission declined to reduce the weight accorded to the data for the period after the filing of the petition in making its determination of material injury and in making its determination of the threat of material injury.

19. In declining to accord reduced weight to post-petition data, the Commission did not address, or otherwise ignored, evidence that contradicted its conclusions.

20. The Commission's failure to adequately consider post-petition effects and to accord less weight to post-petition data rendered its negative material injury and threat determinations unsupported by substantial evidence and otherwise not in accordance with the law.

## COUNT THREE

21. Paragraphs 1-20 are hereby re-alleged and incorporated by reference.

22. While the Commission found that the volume of subject imports was significant, the Commission made several subsidiary findings regarding the volume of subject imports that minimized that volume and contributed to the Commission's negative material injury and threat determinations.

23. In making these findings regarding the volume of subject imports, the Commission did not address, or otherwise ignored, evidence that contradicted its conclusions.

24. The Commission's methodology used to calculate the volume of subject imports was unreasonable and based on flawed data.

25. The Commission's subsidiary findings that minimized the volume of subject imports are unsupported by substantial evidence.

6

## COUNT FOUR

26. Paragraphs 1-25 are hereby re-alleged and incorporated by reference.

27. The Commission found that subject imports did not undersell the domestic like product to a significant degree. In making this determination, the Commission relied on flawed data and an unreasonable methodology to analyze price effects. The Commission also did not address, or otherwise ignored, evidence that contradicted its conclusions.

28. The Commission's determinations regarding underselling are unsupported by substantial evidence.

## COUNT FIVE

29. Paragraphs 1-28 are hereby re-alleged and incorporated by reference.

30. The Commission found that subject imports did not suppress or depress domestic prices to a significant degree. In making these determinations, the Commission relied on an unreasonable methodology to assess price effects. The Commission also did not address, or otherwise ignored, evidence that contradicted its conclusions.

31. In making its negative price depression and suppression determination, the Commission applied the incorrect standard of causation. The statute directs the Commission to consider whether the effect of imports is to "depress{} prices to a significant degree or prevent{} price increase, which otherwise would have occurred, to a significant degree." Section 771(7)(C)(ii)(II) of the Act, 19 U.S.C. § 1677(7)(C)(ii)(II). Instead, the Commission reached a negative price effects determination on the basis that imports were not the "dominant driver" of palladium pricing.

32. The Commission's determinations regarding price depression and suppression are unsupported by substantial evidence and are otherwise not in accordance with the law.

## COUNT SIX

33. Paragraphs 1-32 are hereby re-alleged and incorporated by reference.

34. The Commission did not find a causal nexus between subject imports and the domestic industry's worsening performance throughout the POI, based on a number of conclusions, including findings regarding the volume of subject imports, the impact of subject imports on prices, and the domestic industry's cost structure. As reviewed above, many of these findings were themselves unsupported by substantial evidence and/or contrary to law. In addition, in reaching this conclusion, the Commission did not address, or otherwise ignored, evidence that contradicted its conclusions.

35. The Commission's determination that there was no causal nexus between subject imports and the domestic industry's performance during the POI is unsupported by substantial evidence.

## COUNT SEVEN

36. Paragraphs 1-35 are hereby re-alleged and incorporated by reference.

37. In its threat determination, the Commission found no likelihood of substantially increased subject imports in the imminent future. This finding relied principally on the Commission's flawed findings with respect to volume discussed above. The Commission also did not address, or otherwise ignored, evidence that contradicted its conclusions.

38. In its threat analysis, the Commission again failed to adequately consider post-petition effects and to accord less weight to post-petition data when analyzing the likelihood of substantially reduced imports in the imminent future.

39. The Commission's determinations regarding the likelihood of substantially increased subject imports in the imminent future are unsupported by substantial evidence and otherwise not in accordance with the law.

## COUNT EIGHT

40. Paragraphs 1-39 are hereby re-alleged and incorporated by reference.

41. In its threat determination, the Commission found that subject imports are unlikely to enter at prices that would significantly undersell the domestic product. In reaching this conclusion, the Commission relied on its findings with respect to present underselling over the POI, which are flawed for the reasons stated above. The Commission also did not address, or otherwise ignored, evidence that contradicted its conclusions.

42. In its threat analysis, the Commission again failed to adequately consider post-petition effects and to accord less weight to post-petition data when analyzing the likelihood that imports would enter at prices that would significantly undersell the domestic like product.

43. The Commission's determination regarding the likelihood that subject imports will enter at prices that would significantly undersell the domestic product is unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT NINE

44. Paragraphs 1-43 are hereby re-alleged and incorporated by reference.

45. In its threat determination, the Commission found that subject imports are unlikely to enter at prices that would be likely to have a significant depressing or suppressing effect on domestic prices. In reaching this conclusion, the Commission relied on its findings with respect to present price depression and suppression over the POI, which are flawed

for the reasons stated above. The Commission also did not address, or otherwise ignored, evidence that contradicted its conclusions.

46. In its threat analysis, the Commission again failed to adequately consider post-petition effects and to accord less weight to post-petition data when analyzing the likelihood that imports would depress or suppress prices to a significant degree.

47. The Commission's determination that subject imports are unlikely to have a significant depressing or suppressing effect on domestic prices is unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT TEN

48. Paragraphs 1-47 are hereby re-alleged and incorporated by reference.

49. The Commission determined that subject imports do not threaten material injury to an industry in the United States in the imminent future. In reaching this determination, the Commission failed to address the nature of the numerous prohibited Russian subsidies found by Commerce, including export subsidies.

50. The statute requires the Commission to consider information provided by Commerce regarding the nature of the countervailable subsidies granted by a foreign government, the effects likely to be caused by such subsidies, and whether imports are likely to increase in light of such subsidies. *See* Section 771(7)(E)(i) and (7)(F)(i)(I) of the Act, 19 U.S.C. § 1677(7)(E)(i) and (7)(F)(i)(I).

51. The Commission's failure to address the numerous prohibited subsidies granted by the Government of Russia was not in accordance with the law.

## PRAYER FOR RELIEF AND JUDGMENT

**WHEREFORE**, Plaintiffs, Sibanye-Stillwater and the USW, respectfully request that this Honorable Court enter judgment in favor of Plaintiffs, hold that the Commission's Final Determination is unsupported by substantial evidence and otherwise not in accordance with law, and remand the Final Determination with instructions to issue a new determination that is consistent with the Court's decision. Sibanye-Stillwater and the USW further request that the Court provide such other relief as is just and proper.

Respectfully submitted,


_/s/ Elizabeth J. Drake_____

Roger B. Schagrin
Elizabeth J. Drake
Amanda Swenson

**SCHAGRIN ASSOCIATES**
900 Seventh Street NW, Suite 500
Washington, D.C. 20001
(202) 223-1700

*Counsel to Sibanye-Stillwater and the USW*

**Certificate of Service and Notice to Interested Parties**

**Stillwater Mining Company d/b/a Sibanye-Stillwater and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC v. United States**

**Court No. 26-03232**

Pursuant to USCIT R.3(f), USCIT R.5 and Paragraphs 5 and 6 of Administrative Order 02-01 of the U.S. Court of International Trade, I, Elizabeth J. Drake, certify that on the 13th day of August 2026, a copy of the Complaint was served via certified mail, return receipt requested, upon the following:

**THE UNITED STATES**

Attorney General of the United States
Attorney-in-Charge
International Trade Field Office
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Supervision Attorney
Commercial Litigation Branch Civil Division
U.S. Department of Justice P.O. Box 480
Ben Franklin Station
Washington, DC 20044

**THE U.S. INTERNATIONAL TRADE COMMISSION**

Secretary
U.S. International Trade Commission
500 E Street SW
Washington, DC 20436

**INTERESTED PARTIES:**

Matthew J. McConkey
**Mayer Brown LLP**
1999 K Street, NW
Washington DC 20006
mcconkey@mayerbrown.com

Brian Janovitz, Esq.
**DLA Piper LLP (US)**
500 8th Street, NW
Washington, DC 20004
Brian.janovitz@us.dlapiper.com

*/s/ Elizabeth J. Drake*
Elizabeth J. Drake